```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
In re                               :
                                    :
CIT GROUP INC. SECURITIES LITIGATION :    08 Civ. 6613 (BSJ)
                                    :     Opinion and Order
------------------------------------:
                                    :
This Document Relates to:           :
       ALL ACTIONS                  :
------------------------------------x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/10/10
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Lead Plaintiff Pensioenfonds Horeca & Catering ("PH&C") and named Plaintiff Don Pizzuti ("Pizzuti") filed the above-captioned action on behalf of a putative class of all purchasers or acquirers of CIT Group Inc. ("CIT") securities from December 12, 2006 through March 5, 2008 (the "Class Period"), including all persons who purchased or acquired CIT-Z preferred stock pursuant to the October 17, 2007 CIT-Z offering.  PH&C and Pizzuti bring this action under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (b) (the "1934 Act") and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), and the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §§ 77k and 77o.

Defendants Jeffrey M. Peek ("Peek"), Joseph M. Leone ("Leone"), William J. Taylor ("Taylor"), and Thomas B. Hallman ("Hallman") (collectively, the "1934 Act Defendants") now move to dismiss all claims under the 1934 Act, and Peek, Leone,

1

Taylor, Gary C. Butler ("Butler"), William M. Freeman ("Freeman"), Susan Lyne ("Lyne"), Marianne Miller Parrs ("Parrs"), Timothy M. Ring ("Ring"), John Ryan ("Ryan"), Seymour Sternberg ("Sternberg"), Peter J. Tobin ("Tobin"), and Lois M. Van Deusen ("Van Deusen") (the "1933 Act Defendants," and together with the 1934 Act Defendants, "Defendants") move to dismiss all claims under the 1933 Act.[1]  For the reasons stated below, Defendants' Motion is DENIED in its entirety.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted.  "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true."  Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991).  The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff.  See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

---

[1] On November 1, 2009, CIT filed for bankruptcy relief in United States Bankruptcy Court for the Southern District of New York.  Thereafter, on November 16, 2009, Plaintiffs voluntarily dismissed CIT from the above-captioned matter.  Because Count IV of the Consolidated Complaint relates only to CIT, the Court does not address that Count or the claims outlined therein.

2

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Instead, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1940 (2009).

## DISCUSSION

### I. PH&C Has Stated a Claim for Violation of Section 10(b) of the 1934 Act

To state a claim under Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5(b), a plaintiff must plead six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 343-44

3

(2005). In the instant case, lead plaintiff PH&C has satisfied each of these requirements.

### 1. PH&C Has Adequately Alleged False Statements

Under the Private Securities Litigation Reform Act ("PSLRA"), a complaint in a securities fraud suit must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B); see Tellabs, Inc. v. Makor Issues & Rights, LTD, 551 U.S. 308, 320 (2007) (internal quotation omitted). To satisfy the materiality requirement, a plaintiff must allege a statement or omission that a reasonable investor would have considered significant in making investment decisions. See Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988); see also ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (finding that to fulfill the materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available"). Materiality is a mixed question of law and fact, and depends on all relevant circumstances. See TSC Indus., 426 U.S. at 450. Therefore, a

4

complaint normally should not be dismissed based on materiality "unless [the misstatements or omissions] are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." ECA, 553 F.3d at 197 (internal quotation omitted); see also Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 359 (2d Cir. 2002) ("[A] complaint fails to state a claim of securities fraud if no reasonable investor could have been misled about the nature of the risk when he invested.").

In the instant case, the Court finds that PH&C has sufficiently alleged that the 1934 Act Defendants made misleading statements and omissions. PH&C alleges that the 1934 Act Defendants (1) failed to disclose the lowering of CIT's credit standards or the concentration of non-guaranteed, at-risk student loans at Silver State; (2) misrepresented the performance of CIT's subprime home lending and student loan portfolios; and (3) misstated CIT's financial information in violation of GAAP. With respect to the first category of statements, PH&C alleges several changes in CIT's lending standards that effectively loosened requirements for a subprime home loan, and alleges that the 1934 Act Defendants were aware of and approved these changes. (See Am. Compl. ¶¶ 53, 133, 170, 171.) PH&C further claims that, even as CIT was allegedly lowering lending standards, Defendants made written and oral

5

statements indicating that CIT had "disciplined lending standards" (id. ¶ 65) and was "much more conservative" than other lenders (id. ¶ 46) and that CIT had "tightened home lending underwriting, . . . [and] raised minimum FICA requirements" (id. ¶ 57).

As Judge Buchwald recently found in In re Ambac Financial Group, Inc. Securities Litigation, in light of the 1934 Act Defendants' touting of CIT's conservative lending standards, the failure to disclose the lowering of such standards is actionable:

> Where a defendant affirmatively characterizes management practices as "adequate," "conservative," "cautious," and the like, the subject is "in play." For example, if a defendant represents that its lending practices are "conservative" and that its collateralization is "adequate," the securities laws are clearly implicated if it nevertheless intentionally or recklessly omits certain facts contradicting these representations . . . By addressing the quality of a particular management practice, a defendant declares the subject of its representation to be material to the reasonable shareholder, and thus is bound to speak truthfully.

Ambac, __ F. Supp. 2d __, 2010 WL 727227, at *23 (S.D.N.Y. Feb. 22, 2010) (quoting Shapiro v. UJB Fin. Corp., 964 F.2d 272, 282 (3d Cir. 1992)).

PH&C has also alleged actionable misstatements with respect to the performance of CIT's student loan portfolio. The 1934 Act Defendants made statements about the conservative composition, stability, and performance of this portfolio,

6

including agreeing with the proposition that "there's almost no credit risk in [the student loan] business" (Am. Compl. ¶ 99), indicating that "non-performing assets [were] insignificant" (id. ¶ 101), and stating that that CIT had "effectively exited the consolidation loan and the private loan channels and [was] concentrating on the government guaranteed school channel" (id. ¶ 112). Meanwhile, according to PH&C's detailed allegations, the 1934 Act Defendants received Management Process Reports during the Class Period which included information on the concentration of private, non-guaranteed student loans at Silver State, Silver State's abnormally high delinquency rate and low graduation rate, and CIT's failed attempt to sell the Silver State loan portfolio. PH&C further claims that several of the 1934 Act Defendants had a duty to monitor the performance of the student lending portfolio, and were therefore aware of the impairment of the Silver State loans. The information gleaned from the Management Process Reports, and from monitoring the Silver State portfolio, tended to contradict Defendants' reassuring statements regarding the student loan portfolio as a whole.

### 2. PH&C Has Adequately Alleged Scienter

Under the heightened pleading standard established by the PSLRA, a plaintiff must state with particularity "facts giving rise to a strong inference that the defendant acted with the

7

required state of mind," 15 U.S.C. § 78u-4(b)(2): namely, "scienter, a mental state embracing intent to deceive, manipulate, or defraud," Tellabs, 551 U.S. at 319 (internal quotation omitted). When deciding a motion to dismiss a Section 10(b) action, the Court must determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 323. In assessing all these allegations, furthermore, the Court must balance reasonable inferences favoring the plaintiff against those favoring the defendant. Id. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id.

A plaintiff may establish an inference of scienter by "(a) alleging facts demonstrating that defendants had both the motive and an opportunity to commit fraud or (b) otherwise alleging facts to show strong circumstantial evidence of defendants' conscious misbehavior or recklessness." In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 74 (2d Cir. 2001). A plaintiff alleging motive and opportunity must allege that defendants "benefited in a concrete and personal way from the purported fraud," and not merely that they achieved goals "possessed by virtually all corporate insiders." S. Cherry St., LLC v.

8

Hennessee Group LLC, 573 F.3d 98, 109-10 (2d Cir. 2009) (internal quotation omitted). A plaintiff who cannot show motive may show strong circumstantial evidence of conscious misbehavior or recklessness, but "the strength of the circumstantial allegations must be correspondingly greater." ECA, 553 F.3d at 199 (internal quotation omitted).

To state a claim based on recklessness, a plaintiff must allege "conscious recklessness" or "a state of mind approximating actual intent, and not merely a heightened form of negligence." S. Cherry, 573 F.3d at 109 (internal quotation omitted). To do this, a plaintiff must plausibly show "highly unreasonable" conduct representing "an extreme departure from the standards of ordinary care," such as that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Id. (internal quotation omitted).

As the Second Circuit noted in Novak v. Kasaks, "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation." Novak, 216 F.3d 300, 308 (2d Cir. 2000). Sufficient allegations of recklessness therefore require pleading "that specific

9

contradictory information was available to the defendants at the same time they made their misleading statements." In re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp. 2d 452, 484 (S.D.N.Y. 2006). "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc. (Dynex I), 531 F.3d 190, 196-97 (2d Cir. 2008).

In the instant case, the Court finds that PH&C has stated a claim based on recklessness, and therefore does not reach the question of motive. Specifically, PH&C alleges that the 1934 Act Defendants (1) knew about CIT's lowered lending standards—and, in some cases, affirmatively approved them—while publicly touting the company's "conservative" and "disciplined" approach to subprime lending; and (2) learned of the deterioration of CIT's home loan and student loan portfolios, while making public statements indicating that CIT was outperforming the market and would suffer only minimal losses. Therefore, the Court finds that PH&C has adequately alleged scienter with respect to the 1934 Act Defendants.

Accordingly, Defendants' Motion to Dismiss Count I is DENIED.

## II. PH&C Has Adequately Alleged Control Person Liability Under Section 20(a) of the 1934 Act

10

In addition to the direct claims of fraud against all 1934 Act Defendants, PH&C asserts that the 1934 Act Defendants are liable as controlling persons under Section 20(a) of the 1934 Act. Although a defendant "cannot be held liable for both a primary violation and as a control person, alternative theories of liability are permissible at the pleading stage." Police and Fire Retirement Sys. of City of Detroit v. SafeNet, Inc., 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009).

Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). In the Second Circuit, "[t]o establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by a controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007). Therefore, to withstand a motion to dismiss, a Section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness. See In re UBS

11

Auction Rate Sec. Litig., Nos. 08 Civ. 2967, 08 Civ. 3082, 08 Civ. 4352, 08 Civ. 5251, 2009 WL 860812, at *3 (S.D.N.Y. Mar. 30, 2009) (stating that to allege control person liability under § 20(a), plaintiffs must allege "some level of culpable participation at least approximating recklessness" (internal quotation marks omitted)); Steed Fin. LDC v. Nomura Sec. Int'l, Inc., No. 00 Civ. 8058, 2001 WL 1111508, at * 10 (S.D.N.Y. Sept. 20, 2001) ("A plaintiff may plead either conscious misbehavior or recklessness to satisfy the state of mind portion of the culpable participation element.").

As discussed above, PH&C has adequately pled that a primary violation under section 10(b) of the 1934 Act took place, and that the 1934 Act Defendants participated with scienter in the primary violation. Defendants do not contest that Peek, Leone, Taylor, and Hallman are "controlling person[s]" within the statute. See S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1472-73 (2d Cir. 1996) ("Control over a primary violator may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." (quoting 17 C.F .R. § 240.12b-2)). Plaintiffs allege that because of their executive positions, the 1934 Act Defendants were able to control the conduct of CIT's business, the information contained in its SEC filings, and

12

public statements about its business. (See, e.g., Am. Compl. ¶ 209.) The Consolidated Amended Complaint therefore contains allegations sufficient to plead a claim that the 1934 Act Defendants are "controlling person[s]" under Section 20(a).

Accordingly, Defendants' Motion to Dismiss Count II is DENIED.

### III. Pizzuti Has Stated a Claim for Violation of Section 11 of the 1933 Act

The 1933 Act imposes liability on those who sign certain false and/or misleading disclosure documents. Section 11 applies to disclosures made in connection with registration statements, and provides that every signer and underwriter may be held liable for a registration statement which "includes untrue statements of material facts or fails to state material facts necessary to make the statements therein not misleading." 15 U.S.C. § 77k; see Ernst & Ernst v. Hochfelder, 425 U.S. 185, 208 (1976).

A proper Section 11 claim must allege: (1) the purchase of a "registered security, either directly from the issuer or in the aftermarket following the offering"; (2) that the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11; and (3) that the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein

13

or necessary to make the statements therein not misleading." Morgan Stanley, 592 F.3d at 358-59.[2] Liability under Section 11 is strict liability, but this is tempered by the fact that such liability is limited to a defendant who (1) signed the statement at issue; (2) was a director, person performing similar functions, or partner in the issuer at the time the statement was issued; (3) was named in the statement, with that party's consent, as being or about to become a director, person performing similar functions, or partner; (4) was an expert whose involvement was, with that party's consent, listed in the statement; or (5) was a statutory underwriter of the security. See 15 U.S.C. § 77k (a)(1)-(5).

In the instant case, the 1933 Act Defendants argue first that the claims relating to Section 11 sound in fraud, and are therefore subject to a higher pleading standard. (See Defs.' Mem. 57-58.) This argument is without merit.

As already noted, Section 11 of the 1933 Act imposes strict liability for misrepresentations of material fact in registration statements. To state a claim under this section, a

---

[2] Liability pursuant to Section 11 is imposed only if the statements or omissions relied upon are "material." A statement or omission is deemed material if "taken together and in context," it "would have misled a reasonable investor." Morgan Stanley, 592 F.3d at 360. As noted above, the Second Circuit has observed that materiality is "a mixed question of law and fact." Therefore, "[a] complaint may not properly be dismissed on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Id.

14

plaintiff need not plead scienter, reliance, or fraud. Rombach v. Chang, 355 F.3d 169 n.4, 171 (2d Cir. 2004).

However, the Second Circuit has determined that the wording of Federal Rule of Civil Procedure 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." Id. at 171. Therefore, "the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." Id. Under Rombach, "in determining which pleading standard applies to a securities cause of action, a court must look not to the statutory elements of the cause of action, but rather to the underlying conduct alleged." In re NovaGold Res. Inc. Sec. Litig., 629 F. Supp. 2d 272, 290 (S.D.N.Y. 2009).

When a plaintiff brings claims under both the 1933 Act and the 1934 Act, though, "the same course of conduct that would support a Rule 10b-5 claim may as well support a Section 11 claim." Rombach, 355 F.3d at 171. Thus, even when "it is clear that plaintiffs believe that . . . the defendants[] were engaged in a massive fraud," "[t]his fact . . . does not take away plaintiffs' right to plead in the alternative that defendants violated provisions requiring only negligence." In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007).

That said, 1933 Act claims "cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness." In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005). Rather, plaintiffs should "specifically [plead] alternate theories of fraud and negligence" in order to avoid heightened pleading standards for their 1933 Act claims. In re Refco, 503 F. Supp. 2d at 633.

In the instant case, we need not determine whether Pizzuti's 1933 Act claims against Peek, Leone, and Taylor sound in fraud, because Pizzuti has met the Rule 9(b) standard by specifying the "who, what, when, where and how" of the alleged misstatements in connection with the CIT-Z offering. See In re Ambac, __ F. Supp. 2d __, 2010 WL 727227, at *26.

As for Pizzuti's claims against the remaining 1933 Act Defendants, these do not sound in fraud. Pizzuti does not allege that Butler, Freeman, Lyne, Parrs, Ring, Ryan, Sternberg, Tobin, or Van Deusen acted fraudulently; rather, Pizzuti asserts claims based on "a theory of strict liability and/or negligence for materially untrue statements and misleading omissions made in connection with the registration statement . . . for the October 17, 2007 offering of CIT-Z preferred shares." (Am. Compl. ¶ 5.) Moreover, Pizzuti has clearly set off the sections of the Consolidated Amended Complaint relevant to the 1933 Act claims (see id. ¶¶ 220, 236,) and, as in Novagold, "[t]he [1933]

16

Act allegations . . . charge [the 1933 Act] [D]efendants with failing to make a reasonable and diligent investigation into the statements contained in the Registration Statement, conduct suggesting negligence, not fraud." Novagold, 629 F. Supp. 2d at 290; (see also Am. Compl. ¶¶ 223, 239.)

Accordingly, the Court finds that Pizzuti's Section 11 claims against Butler, Freeman, Lyne, Parrs, Ring, Ryan, Sternberg, Tobin, and Van Deusen do not sound in fraud, and further finds that Pizzuti has satisfied the pleading requirements of Rule 8 for all of the 1933 Act Defendants. Pizzuti claims that CIT's reported financial results for 1Q 2007 and 2Q 2007 failed to properly disclose the risks of the student loan portfolio or to account for the impaired Silver State loans, and that the CIT-Z registration statement and prospecutus, which incorporated these results, therefore contained false or misleading statements concerning a material fact.  Pizzuti also alleges that each of Defendants signed the registration statement.

Accordingly, Pizzuti has adequately alleged a Section 11 claim as against all 1933 Act Defendants, and Defendants' Motion to Dismiss Count III must be DENIED.

IV.   Pizzuti Has Stated a Section 15 Claim Under the 1933 Act

Section 15 allows a plaintiff to proceed against "[e]very person who, by or through stock ownership, agency or otherwise

17

... controls any persons liable under section 11" of the 1933 Act. See 15 U.S.C. § 77 o. Liability under Section 15 is, for the most part, contingent upon the imposition of liability under either Sections 11 or 12(a)(2). See In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 358 (2d Cir. 2010).

To state a claim under this provision, a plaintiff must plead: (1) a primary violation; and (2) control over the primary violator. See In re Flag Telecom Holdings, Ltd. Sec. Litig., 352 F. Supp. 2d 429, 457 (S.D.N.Y. 2005). As found above, Pizzuti has adequately pled a primary violation of Section 11. Therefore, we must only decide whether the 1933 Act Defendants were "controlling persons" within the meaning of Section 15.

Control of a primary violator at the time of an offering is sufficiently pled where a plaintiff alleges (1) that the defendant is an officer or director of the company in question and (2) that the defendant signed a registration statement containing materially false or misleading statements. See In re Lehman Bros. Sec. & Erisa Litig., 684 F. Supp. 2d 485, 495 (S.D.N.Y. 2010) ("These allegations sufficiently allege that the Individual Defendants were control persons . . . because they were the company's officers or directors and signed the registration statements."); In re Refco, 503 F. Supp. 2d at 640 ("[T]he complaint alleges that the . . . Individual Defendants were at all relevant times directors of [the company], and that

18

they 'prepared and approved' the . . . Registration Statement. Thus, it is not implausible that plaintiffs could develop a record that could support a finding of control as to the . . . Individual Defendants.").

In the instant case, Pizzuti has adequately pled that all 1933 Act Defendants were officers of CIT and signed the October 17, 2007 registration statement that was incorporated into the CIT-Z prospectus. Therefore, Pizzuti has stated a claim for Section 15 liability as against the 1933 Act Defendants, and the Motion to Dismiss Count V must be DENIED.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss is DENIED in its entirety.

SO ORDERED:

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          June 10, 2010